W. CALWELL, Appellant, v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.

**Railroads:** IMPLIED LICENSE TO. USE A FOOTPATH: NEGLIGENCE OF
1 COMPANY. Where a large number of persons have for some time been accustomed to use a well defined footpath in crossing the tracks of a railway company, to the knowledge of the officers and employés of the road, an implied license exists to cross the tracks at that point; and the company owes a pedestrian while

using the path the same care that it would if the person were crossing in a public street or highway.

**Same:** CONTRIBUTORY NEGLIGENCE: SUBMISSION OF ISSUE. Unless there is such a lack of evidence that the court should set a verdict aside the issue should be submitted to the jury: so that where a plaintiff was injured in crossing the tracks of a railway company at the place where he had a right to go, and he testified that before crossing he looked and listened without observing an approaching train, the question of his contributory negligence should have been submitted; especially in view of the dispute in the evidence as to whether the engineer gave any warning signal, and the rate of speed at which the train was running.

*Appeal from Polk District Court.*— HON. WILLIAM H. McHENRY, Judge.

THURSDAY, MARCH 19, 1908.

THIS is an action to recover damages for a personal injury. There was a directed verdict for the defendant, and the plaintiff appeals.— *Reversed.*

*Halloran & Starkey, A. H. McVey,* and *E. H. McVey,* for appellant.

*John I. Dillie,* for appellee.

SHERWIN, J.— The plaintiff received the injury for which he seeks recovery within the corporation limits of the town of Valley Junction. The road of the defendant company runs due east and west through said town, and is paralleled for some distance by the Chicago, Rock Island & Pacific road, the tracks at the point of the injury and for some distance both east and west thereof being about eight feet apart. The Rock Island road maintains shops at a point some distance southwest of the joint depot, and southwest of the point where the plaintiff's injury was received. The plaintiff was an employé of the Rock Island company, whose duty took him to their shops, and while passing from said

shops to his boarding house he crossed the defendant's track, and while doing so was struck by the engine of an east-bound passenger train. The collision occurred several hundred feet west of the depot.

Two questions are presented for our determination: First, the question of the negligence of the defendant; and, second, the question of contributory negligence on the part of the plaintiff. The petition alleges that the plaintiff was struck by the train when the same was running from twenty to thirty miles per hour; " that the engineer or fireman neglected or failed to ring the bell or blow the whistle or give any warning or sign to indicate the approach of said train; that employés of both companies used the footpath heretofore mentioned in crossing said tracks, which use was well known to defendant as herein alleged; that the defendant was grossly negligent and careless in running its train at a speed of from twenty-five to thirty miles per hour through said yards that were being so constantly used, without blowing a whistle or ringing a bell, or giving some warning of the approach of said train."

The defendant urges that the plaintiff was at the time of the injury a trespasser upon its track, and that it was not bound to look for him, or give the statutory signal at that

1. RAILROADS: implied license to use a foot path: negligence of company.

particular place. The testimony shows without substantial conflict that a very large number of the employés of the Rock Island road traveled between the town and its shops southwest of the point of the accident, using for such travel a well-worn path which crossed the defendant's track at the point of the injury. The testimony further shows that this use of the path had been continuous for several years, and that such use was well known to the employés of the defendant operating trains upon said road through Valley Junction. This use of the path and the crossing over the defendant's track at the point in controversy is not seriously controverted by the defendant, but it claims

that such use does not bring the case within the rule of our cases, which have held that a similar use implies a license or invitation to so use the track. There is no evidence tending to show any objection to such use on the part of the defendant company.

In *Clampit v. C., St. P. & K. C. Ry. Co.,* 84 Iowa, 71, the facts were that, where the accident occurred, the track was daily used by a number of persons, whose employment required them to cross the defendant's track in going to and returning from their work. This was shown to have been known by the company, and we held that the company having, through their employés and officers, knowledge of the use of the footpath crossing, and having made no objection thereto, were presumed to assent to it, and, by so doing, to give to those who used the crossing a license therefor; and it was held that the plaintiff was not a trespasser upon the railroad track, but, on the contrary, was entitled to all the rights and protections of one rightfully thereon, and that he could recover for injuries resulting from the defendant's want of care. It is true that in that case the evidence showed that a stairway had been erected on one side of the track for the passage of those who used the footpath, and, because of this circumstance, the defendant herein attempts to distinguish this case from the *Clampit* case; but, as we shall hereafter endeavor to show, the distinction cannot avail it.

In *Thomas v. C., M. & St. P. Ry. Co.,* 103 Iowa, 649, a small child was killed while playing upon the defendant's track. The evidence in that case showed that the track had been used as a pathway for some time prior to the accident, and that the employés and the officers of the company had knowledge of that fact, and it was held that a license to so use it would be implied. In that case it appeared that a ladder had been placed on the bridge over the highway for the evident purpose of ascending from the highway to the track and of descending from the track to the highway. Defendant's counsel also attempted to distinguish between the

*Thomas* case and the instant one because of the ladder of which we have spoken. But the ladder in the *Thomas* case and the stairway and ties in the *Clampit* case were material circumstances only on the question of the defendant's knowledge of the use which was being made of their tracks. This is evident from the language used in the *Clampit* case, which was followed and approved in the *Thomas* case. The language was as follows: " The stairway and the ties across the ditch, as well as the path made by footmen, prominently advertised the place as a crossing used by pedestrians. No engineer or fireman passing along the tracks at that place with his eyes open, in the exercise of reasonable watchfulness and care, could have failed to see those indications of a footpath, and to understand therefrom that it was used by pedestrians, if he possessed ordinary intelligence."

The language just quoted is applicable to the case at bar. Here the testimony shows that there was a well-defined footpath across the defendant's track. It was in the defendant's yard at Valley Junction, and was used by hundreds of people, whose duty or pleasure took them from the town to the shops of the Rock Island road, and there can be no question but what the defendant's officers and employés had full knowledge of the use being made of its track, and under such circumstances, and under the rule of the cases which we have cited, there can be no question that there was an implied license to so use its track. If this be true, it follows that the company, in the operation of its trains, owed to the users of this way the same care that it would owe the public at any highway or street crossing. See cases, *supra,* and *Booth v. Union Ter. Co.,* 126 Iowa, 8.

The appellee contends, however, that this case falls within the rule announced in *Heiss v. Railway Co.,* 103 Iowa, 590, but the two cases are easily distinguished. In that case the plaintiff was going to the defendant's depot, and, instead of following the sidewalk which led to the platform, he took a path which made a little shorter cut, but which required

him to climb onto the station platform from the ground, a distance of about three feet.   We held that the railroad company had made every necessary provision for reaching its depot, and that the facts did not show an implied license for the plaintiff to use the path that he took.   We are of the opinion that this case is governed by the rule of the cases cited, and that the question of the defendant's negligence, at the time of the accident, should have been submitted to the jury.   There was a conflict in the evidence as to whether the bell was rung before reaching this point and while coming into the yard from the west, and there was also evidence tending to show that the train was running at a high rate of speed, and it was evidently for the jury to determine from all the facts and circumstances shown whether or not the defendant was guilty of negligence in operating its train at the time in question.

The appellee also insists that the plaintiff was guilty of contributory negligence, and that the verdict was properly directed on that ground alone; but with this contention we find ourselves unable to agree.   The footpath

2. SAME: contributory negligence: submission of issue.

to which we have heretofore referred led from the Rock Island shops in a northeasterly direction to the main tracks of the Rock Island road and the tracks of the defendant road, reaching them at a point some distance west of the place of the accident.   The Rock Island main line and the switch track were then crossed, and the path went east between the two main lines until it reached the point where the plaintiff was injured. Here it crossed the defendant's main line diagonally, it appearing from the evidence that some three or four steps were necessary to effect the crossing.   The plaintiff testified that when he reached the point where the path went east between the tracks he stopped and looked both ways for trains on the defendant's road; that he then went on east and when he reached the point where the path crossed the defendant's track he again stopped and looked and listened for a train;

that he neither saw nor heard anything indicating the approach of a train from either direction; and that he immediately started across the track, and was struck just as he reached the north rail thereof. The evidence tended to show that the headlight on the engine of the train was burning very dimly when the engine struck the defendant, and that it was not much, if any, brighter than the switch lights which were burning in the yard west of the point of accident at that time. The evidence also tended to show that the whistle was not sounded or the bell rung until just a moment before the plaintiff was struck. It is true there was a conflict in the evidence on these matters, but it was for the jury to say which line of testimony was entitled to the most credit. It was also for the jury to determine the credibility of the various witnesses who testified, and the weight which should be given to their testimony. While it seems almost impossible that the plaintiff could have looked and listened for this train, as he testified that he did, without seeing or hearing its approach, it was after all, a question which the jury should determine instead of the court. If it believed that he, in fact, looked and listened for this train before attempting to cross the defendant's track, but was unable to either see or hear it because of its failure to blow the whistle or ring the bell, or because of the condition of its headlight and because of the yard conditions, it was justified in finding that he was not guilty of contributory negligence; and we are of the opinion that the facts and circumstances shown are such that we should not say, as a matter of law, that the plaintiff was guilty of such negligence. The rule is, of course, well settled that, where reasonable men may reach different conclusions from the same state of facts, the court should not interfere with a verdict, and, unless there is such a lack of testimony as to require the setting aside of a verdict, the court should not direct one.

The case is an extremely close one on the question of the plaintiff's contributory negligence, but we think there

was sufficient evidence to take it to the jury.   It follows that the trial court erroneously directed a verdict for the defendant, and the case must be *reversed*.